UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PT RAHAJASA MEDIA INTERNET,

        Plaintiff,    Civil Action No.:

 -against-

               **COMPLAINT**

Telecommunication and Informatics Financing
Provider and Management Center, Directorate
General of Post and Information Administration,
Ministry of Communication and Information,
Republic of Indonesia,

        Defendant.

---

Plaintiff PT Rahajasa Media Internet [hereinafter "Plaintiff" or "Rahajasa"], by and through its attorneys, Law Office of Bridget Butler, Esq., for its Complaint, alleges as follows:

## NATURE OF THE ACTION

1. This is an action under the Uniform Foreign Money Judgments Recognition Act, New York C.P.L.R. §§ 5301 et seq., for recognition and enforcement of a final money judgment entered in Indonesia in favor of Plaintiff Rahajasa and against the Defendant Telecommunications and Informatics Financing Provider and Management Center, Directorate General of Post and Information Administration, Ministry of Communication and Information, a political subdivision and/or agency of the Republic of Indonesia, based on a commercial dispute arising from the breach of several government contracts and the defendant's refusal to pay monies owed, in accordance with those commercial contracts.

## THE PARTIES

2. Plaintiff Rahajasa is an Indonesian limited liability company domiciled at Graha Darnelis, 2nd Floor, J. Amil No. 7 Pejaten Barat, Jakarta, 12510, Indonesia. Rahajasa is organized under the laws of the Republic of Indonesia. Rahajasa is an internet service provider that was founded in 1994 and it provides high speed fiber optic internet service to residential and commercial properties in Indonesia.

3. Defendant Telecommunications and Informatics Financing Provider and Management Center, Directorate General of Post and Information Administration, Ministry of Communication and Information, Republic of Indonesia [hereinafter "Defendant" or "Agency"], aka, Bakti (Badan Aksesibilitas Telekomunikasi Dan Informasi) is located at 9th Floor Menara Merdeka, Jl. Budi Kemuliaan I number 2, Gambir 10110, Central Jakarta, Indonesia.[1]  Among other things, Defendant hires private companies for telecommunication service construction projects. Defendant is a government agency in and part of the Indonesian government.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1330, 1603(a)-(b), and 1605(a)(1), (2), as Defendant is a foreign state and/or political subdivision thereof, and/or an agency and instrumentality of a foreign state, and the judgment to be recognized and enforced was based upon Defendant's commercial activity which caused a direct effect in the United States.

5. This Court may exercise personal jurisdiction over the Defendant because Defendant is an agency of the Republic of Indonesia and the Republic of Indonesia has

---

[1] This is a new address for the Agency. The Arbitration Award and Writ of Execution were officially sent to former Agency addresses. The current President/Director is Ms. Fadhilah Mathar.

property located in this District, namely funds located in three separate banks operated by the the Republic of Indonesia, Ministry of Finance, in Manhattan: (1) Bank Rakyat Indonesia, 140 Broadway, 36th Floor, New York, New York 10005 [hereinafter "Bank BRI"]; (2) Bank Negara Indonesia, One Exchange Plaza, 5th Floor, 55 Broadway, New York, New York 10006 [hereinafter "Bank BNI"]; and (3) Bank Mandiri Persero, 120 Broadway, 32nd Floor, New York, New York 10271 [hereinafter "Bank BMP"]. These three banks are in this District. Defendant also conducts financial transactions, clearing through the Federal Reserve Bank of New York, in U.S. dollar denominated transactions.

      6.  This District is also the proper venue, under 28 U.S.C. § 1391(f), because of the financial institutions owned and operated by the Republic of Indonesia within the District, have had an historic partnership with the Agency. Defendant Agency, is a unit within the Ministry of Communications and Informatics of the Republic of Indonesia. One of the Agency's duties is to manage Non-Tax State Revenue (PNBP) from the contributions of the Universal Service Obligation (KPU)/Universal Service Obligation (USO) of the Telecommunication Payer. The Agency also provides financial management for the provision of telecommunications and informatics infrastructure and services for the Indonesian people in the frontier, outermost and undeveloped areas with the Indonesian national borders, including management of the operational activities of telecommunications and information, within the country. This Agency manages revenue from the KPU/USO program by investing those funds in short-term investment instruments with its partner bank, Bank BNI, in this District.

## FACTUAL BACKGROUND

7. On November 12, 2010, Rahajasa made a job tender to gain a government contract to implement mobile internet access service centers in certain Indonesian districts. Rahajasa was chosen as the successful bidder, subsequently entering into a commercial contract with Defendant to provide the mobile internet access service centers in Maluku and North Maluku, a project known as "MPLIK Work Package 19".

8. Rahajasa made subsequent job tenders for other projects which also became successful bids. The parties signed, in total, 5 commercial agreements: MPLIK Package 1 Agreement, JALIN WIFI Package 2 Agreement, Desa Pinter Package 5 Agreement, JALIN WIFI Package 7 Agreement, and the MPLIK Package 19 Agreement. All these commercial contracts include Rahajasa's commitment to implement KPU/USO Program Internet Access Services, in different areas throughout Indonesia.

9. The entirety of the work is referred to as "KPU/USO Program Internet Service Work". Rahajasa participated in five public auctions and then at each one of them Rahajasa was declared the auction winner as confirmed in five separate letters from Defendant, representing confirmed agreements to contract for the five separate projects. These auctions were conducted starting in November 2010 through December 2011. Subsequent to each and every confirmation letter from Defendant, the parties bound themselves in KPU/USO Program Internet Service Work agreements to regulate the internet service work for the KPU/USO Program. The legal relationship between the parties is regulated by Article 1338 of the Civil Code of Indonesia.

10. The entire value of Rahajasa implementing the KPU/USO Program Internet Service Work, after value added tax, in accordance with the KPU/USO Program Internet Service Work Agreement was agreed to be IDR 314,979,842,540, which is equivalent to

$22,375,349.07. Each of the five separate agreements included corresponding values of the work Rahajasa would implement and the Defendant would pay to Rahajasa, in exchange.

11. Each of the five agreements also contained two main stages of implementation, including a pre-operational work stage and an operational stage. Each agreement contained timelines for completion of both stages. Each of the five agreements contained provisions for the service to be provided in 48 months and a general provision that the contract became effective from its signing until the deadline for operational work.

12. The five agreements included provisions that required Rahajasa to: (1) build facilities and infrastructure to support a KPU/USO Program Provision Works, in accordance with certain technical specifications and images, included in the KPU/USO Internet Service Work agreement, as well as (2) provide internet services to Defendant. Defendant was then obligated to pay for those services. Rahajasa borrowed money from PT Bank Pembangunan Daerah Jawa Barat dan Banten [hereinafter "Bank BJB"], an Indonesian state bank, to finance the projects. Rahajasa offered collateral of two pieces of real estate.

13. Rahajasa fulfilled its obligations to complete the pre-operational work stage in 2012 and submitted proofs to Defendant, in the form of functional and integrity test results. Defendant accepted these proofs from Rahajasa and issued the company an operational permit: "Operational Permit for the Provision of an Internet Access Service Center for the KPU/USO Sub district" for the Maluku and North Maluku provinces. Upon receiving this permit, Rahajasa began the operational stage, under the MPLIK Work Package 19, providing internet service, from August 16, 2013 through November 15, 2014, in accordance with the relevant agreement.

14.  Rahajasa also carried out the pre-operational stage requirements, pursuant to the other four agreements. This primarily consisted of Rahajasa procuring the necessary assets, as well as, mobilizing facilities and infrastructure. Rahajasa followed up with Defendant, reporting on its execution of all the necessary tasks.

15.  Then on February 12, 2014, Rahajasa received a letter from Defendant announcing a postponement of payment for Rahajasa's work performed, until the Indonesian Parliament issued a budget approval that allowed for such payment. In this letter, the Defendant claimed that it "had not been able to realize Work Performance Payment". This written acknowledgment of Defendant's inability to perform on the agreements between the parties, led Rahajasa to request an audience with the Minister of Communication and Information of the Republic of Indonesia [hereinafter "Minister"], to discuss the problem. On December 23, 2014, Rahajasa representatives met with this Minister with the intention of resolving the contract dispute.

16.  In February 2015, Rahajasa sent a letter to the Minister seeking written confirmation that the implementations of the five projects would continue. Rahajasa also asked for payment for its work already performed, which it was entitled to. In the following months Defendant sent three separate letters to Rahajasa, starting on March 3, 2015, and then again on June 8, 2015, and January 6, 2016, expressing in each one, the intent to no longer carry out any obligations to Rahajasa, under the comprehensive KPU/USO Program Internet Service Work Agreement.

17.  After deliberations, which included meetings and Rahajasa sending multiple correspondence to Defendant seeking payments, in accordance with the contracts, as well as

the reimbursement of costs, Rahajasa sent Defendant a request for dispute resolution for the KPU/USO Program.

18. The parties agreed to engage in formal settlement negotiations. From August 2016 through February 2017, the parties deliberated a total of eight separate times.

19. During this deliberation period, the parties agreed to allow an independent third-party accountant KAP Heliantono & Partners [hereinafter "Expert"] to verify and determine the proper amount of damages, ie, monies, owed by Defendant to Rahajasa, under the contract terms. The parties agreed to be bound by the calculations of the Expert. The Expert calculated the principal amount of Rahajasa's receivables, as well as, lost income and other costs and expenses.

20. While the parties agreed to accept the Expert calculations, the Indonesian Audit Board to the Ministry of Communication and Information [hereinafter "Audit Board"] intervened to stop the deliberations by raising objections to the Expert calculations and the overall deliberations of the parties, because:  (I)  there was a disagreement over the value of compensation for the KPU/USO Program Internet Service Work Agreement which Defendant could pay Rahajasa, primarily with regard to the interest and penalties that Bank BJB may charge; (II) The Audit Board also objected to the exchange rate differences between the U.S. dollar and the Indonesian rupiah; (III) The Audit Board also pointed out that there was no formal agreement between the parties about the status of assets beyond the payment to Rahajasa for construction works and (IV)  Finally, the Audit Board also objected to the absence of a formal agreement, between the parties, regarding the termination of the overall contracts upon Rahajasa's completion of the pre-operational construction stages of each project agreement.

21. With the rejection of the Audit Board, the parties then proceeded to pursue arbitration, pursuant to their agreements, through BANI, ie, the Indonesian National Board of Arbitration. *See* Exhibit A (Arbitration Agreement)[2]. On March 17, 2017, Rahajasa sent Defendant a written notice of dispute resolution through BANI.

## THE ARBITRATION AWARD

22. The parties both voluntarily participated in the BANI proceedings, with Defendant stating preferences for a specific arbiter, and answering Rahajasa's application. Defendant fully submitted to the arbitration process.

23. The tribunal rendered its decision on July 27, 2017, granting Rahajasa's applications and finding Defendant in default of all five of the relevant agreements; ordering:

(A) Defendant to pay Rahajasa, IDR 205,138,307,244, the equivalent, on July 27, 2017, of $15,407,180.41, for implementing the KPU/USO internet service;

(B) Defendant to pay Rahajasa, for the paid interest of PT Bank Pembangunam Daerah Jawa Barat (Bank BJB) in connection with the financing of the KPU/USO Program Internet Service Provision Agreement amounting to IDR 15,742,182,401, the equivalent, on July 27, 2017, of $1,182,337.16;

(C) Defendant to pay Rahajasa the difference in value of the U.S. dollar exchange rate against the Indonesian Rupiah currency, on the financing of the KPU/USO Program Internet Service Provision, totaling IDR 4,785,479,783, the equivalent, on July 27, 2017 of $359,419.71;

---

[2] Exhibit A includes excerpts of the foremost general contract the parties executed, to commence the initial Maluku Province and North Maluku Province project and the relevant general contract provision regarding dispute resolution.

(D) Both Rahajasa and the Defendant to pay one half each of the costs of the BANI arbitration case administration; and

(E) Declaring that the Arbitration Award is final and binding against both parties. *See* Exhibit B1-B3 (Arbitration Award).

24. The BANI arbitrators also ordered, in accordance with Indonesian law and the BANI arbitration rules, that this Award must be registered, by the BANI clerk, at the South Jakarta District Court within the given time period. The Award was so registered on August 15, 2017, at the South Jakarta District Court, in accordance with the law, including Article 59 of the Indonesian Arbitration Law. The Defendant had 30 days from that registration day to make any attempts to annul it or otherwise appeal. The Defendant never did so. In September 2017, the Award became final and binding.

25. Defendant, however, did not proceed to voluntarily pay Rahajasa, in accordance with the Award. On March 26, 2018, Rahajasa Director Roy Rahajasa Yamin, made a formal application for an order of execution, on the Award, at the South Jakarta District Court. *See* Exhibit C (2018 Pro Se Application). The court has never rendered a decision on that application. Mr. Yamin made formal requests on the application, in 2018, with no success.

26. In 2019, Rahajasa was forced into an involuntary bankruptcy, by Bank BJB, due to Rahajasa's defaults on the KPU/USO Program Internet Service Provision loan agreement, which were a direct result of Defendant's failure to honor the underlying contractual agreements to pay Rahajasa. Two receivers were appointed by a court in Indonesia, at the request of Bank BJB, to oversee various assets of Rahajasa, including two items of real property which had been offered as collateral in the relevant loan agreements. Rahajasa company accounts were frozen. The receivers informed Rahajasa's Director, Roy Rahajasa

Yamin, of their position as proxy to sell collateral property.   On November 27, 2019, Mr. Yamin was notified that an auction sale, to be conducted by Bank BJB through the State Asset Auction Service Office, in Jakarta, was scheduled for December 27, 2019. Rahajasa disputes the subsequent sale, on February 13, 2020, due in part, to the fact that Bank BJB conducted the auction, rather than the court-appointed receivers, in violation of relevant Indonesian Bankruptcy Law. Litigation involving the auction sale ensued. The Award is outside the scope of the receiver's possession and control.

27. On June 13, 2022, Rahajasa made a direct application to the South Jakarta District Court, for a writ of execution, by and through legal counsel. The court granted that request, and it issued a writ of execution, on September 14 2022. *See* Exhibit D (Writ of Execution). The court sent notice of the decision directly to Defendant.

28.  As of the date of this filing, the amount of principal due and owing by the Defendant to Plaintiff is $16,948,937.28.

29.  As of June 18, 2024, the amount of interest due and owing by Defendant to Plaintiff, since the date of breach of February 12, 2014, is $15,784,800.68.

30.  As of June 18, 2024, the total amount due and owing by Defendant to Plaintiff is $32,733,737.96.

## **FIRST CLAIM FOR RELIEF**
(Uniform Foreign Money-Judgments Recognition Act)

31. Rahajasa repeats and realleges the allegations contained in paragraphs 1 through 30 of the Petition as though fully set forth herein.

32. New York has adopted the Uniform Foreign Money-Judgments Recognition Act, New York C.P.L.R. §§ 5301 et seq. [hereinafter the "Act"][3].

33. The Act applies to the recognition and enforcement of the September 14, 2022 Order of the South Jakarta District Court [hereinafter "Indonesian Judgment"], which is final, conclusive and enforceable.

34.  An Indonesian Judgment should be entered in favor of Rahajasa and against Defendant Agency in the approximate amount of $16,948,937.28, which reflects the exact spot exchange rate between the Indonesian Rupiah and the U.S. dollar, on the date of the Award, July 27, 2017.

35. The Indonesian Judgment should also include prejudgment interest, in the amount of 9%, the New York state rate for pre-judgment interest, as well as post-judgment interest. This being the amount of interest which compensates Plaintiff Rahajasa for Defendant's willful failure to pay on the underlying contracts and then failure to pay on the Award, after Defendant voluntarily submitted to arbitration and actively participated in it.

36.  Plaintiff Rahajasa has at all times remained the owner and holder of the Indonesian Judgment, which remains in full force and effect.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Rahajasa seeks relief and demands judgment against Defendant Agency as follows:

a.  Granting an Order recognizing the Indonesian Judgment;

---

[3] On June 11, 2021, then New York Governor Andrew Cuomo signed into law a Uniform Foreign Country Money Judgments Act (the "2021 Recognition Act"), which amended New York's Uniform Foreign Country Money-Judgments Act of 1970 (the "1970 Recognition Act").

    b. Granting Plaintiff Rahajasa judgment as against Defendant Agency into an exact U.S. dollar equivalent as of the date of judgment, of principal, $16,948,937.28, and awarding it, along with prejudgment interest from the date of breach, February 12, 2014 of $15,784,800.68, reasonable attorney's fees and costs for bringing this action, and any further relief the Court deems just and proper.

Dated:  June 18, 2024
       New York, New York

Respectfully Submitted,

LAW OFFICE OF BRIDGET BUTLER, ESQ.

By: **/s/ Bridget Butler**
    Bridget Butler
    NY Atty. Reg. No. #4360814
    757 Third Avenue, 20th Floor
    New York, New York 10022
    Tel:  (917) 426-3630
    Fax: (212) 376-4701

*Attorneys for Plaintiff*