UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PT RAHAJASA MEDIA INTERNET,

                Plaintiff,

    -against-

Center for Provision and Management of
Telecommunications and Informatics
Financing, Directorate General of Post
and Informatics, Ministry of
Communication and Information,
Republic of Indonesia ("BP3TI")
formerly Office for Rural
Telecommunications and Informatics,
Directorate General of Posts and
Telecommunications, Ministry of
Communication and Information of the
Republic of Indonesia, aka, BAKTI
KOMINFO, Ministry of Communication
and Informatics of the Republic of
Indonesia, Ministry of Finance, Republic
of Indonesia, and Republic of Indonesia,

              Defendants.

Civil Action No.: 1:24-cv-04643-VEC

**ORAL ARGUMENT REQUESTED**

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO
DISMISS**

ALLEN OVERY SHEARMAN STERLING US LLP
1101 New York Avenue
Washington, D.C. 20005
Tel: (202) 508-8084

*Counsel for Defendants*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................... 4

STANDARD OF REVIEW .................................................................................................... 6

ARGUMENT ....................................................................................................................... 7

I.     VENUE IN THIS DISTRICT IS IMPROPER ................................................................... 7

     A.  The Events Giving Rise to the Claim Did Not Occur in this District........................... 7

     B.  There is No Property in this District that is the Subject of this Action ....................... 9

     C.  BAKTI is Not Licensed to Do Business, Nor Is It Doing Business In this District ... 10

     D.  The Complaint Should be Dismissed for Lack of Venue ........................................... 11

II.    THE DEFENDANTS ARE IMMUNE FROM SUIT UNDER THE FOREIGN
     SOVEREIGN IMMUNITIES ACT ................................................................................. 12

     A.  Defendants Have Not Waived Sovereign Immunity ................................................. 12

     B.  The "Commercial Activity" Exception to Sovereign Immunity Does Not Apply ..... 13

III.   THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER THE
     DEFENDANTS ............................................................................................................... 15

     A.  The Court Lacks Personal Jurisdiction Over the Defendants ..................................... 16

IV.   THE SUMMONS IS NOT ENFORCEABLE UNDER THE FOREIGN COUNTRY
     MONEY JUDGMENTS ACT .......................................................................................... 18

     A.  The Award Does Not Grant or Deny a Sum of Money .............................................. 19

     B.  The Summons is Not Final, Conclusive and Enforceable Where Rendered ............. 19

     C.  The Summons Conflicts with a Final and Conclusive Judgment .............................. 22

V.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST THE
     REPUBLIC OF INDONESIA AND ITS MINISTRIES ................................................... 22

VI.   RAHAJASA HAS NO STANDING TO BRING ITS CLAIM ........................................ 25

CONCLUSION..................................................................................................................... 25

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                           **Page(s)**

*AlbaniaBEG Ambient Sh.p.k. v. Enel S.p.A.*,
    73 N.Y.S.3d 1 (1st Dep't 2018)............................................................................................15

*Argentine Republic v. Amerada Hess Shipping Corp.*,
    488 U.S. 428 (1989)....................................................................................................6, 12

*Ashcroft v. Iqbal*,
    556 U.S. 662 ..............................................................................................................6, 22

*Banca di Credito Cooperativo di Civitanova Marche e Montecosaro Soc.*
    *Cooperativa v. Small*,
    852 Fed. App'x 15 (2d Cir. 2021)........................................................................19, 20, 22

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).........................................................................................................22

*Comm'n Imp. Exp. S.A. v. Republic of Congo*,
    No. 11-CV-6176-JFK, 2012 WL 1468486 (S.D.N.Y. Apr. 27, 2012) .................................8, 9

*Cottman Transmission Sys., Inc. v. Martino*,
    36 F.3d 291 (3d Cir. 1994).................................................................................................8

*Crystallex Int'l Corp. v. PDV Holding Inc.*,
    No. 15-CV-1082-LPS, 2019 WL 6785504 (D. Del. 2019)...................................................10

*Dale v. Colagiovanni*,
    443 F.3d 425 (5th Cir.2006) ...........................................................................................23

*Daou v. BLC Bank, S.A.L.*,
    42 F.4th 120 (2d Cir. 2022) ...........................................................................................13

*Del Castillo v. PMI Holdings N. Am. Inc.*,
    No. 14-CV-03435, 2016 WL 3745953 (S.D. Tex. July 13, 2016)........................................23

*Despotovich v. Republic of Croatia*,
    No. 21-CV-50-AT, 2022 WL 3447989 (S.D.N.Y. Aug. 17, 2022) .......................................15

*Eli Lilly & Co. v. Home Ins. Co.*,
    794 F.2d 710 (D.C. Cir. 1986), *cert. denied*, 479 U.S. 1060 (1987) .....................................10

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
    462 U.S. 611 (1983)........................................................................................................23

ii

*Garb v. Republic of Poland*,
    440 F.3d 579 (2d Cir. 2006)..................................................................14

*Gater Assets Ltd. v. AO Moldovagaz*,
    2 F.4th 49 (2d Cir. 2021) ......................................................................16

*Goldlawr, Inc. v. Heiman*,
    369 U.S. 463 (1962)..............................................................................11

*Guinness PLC v. Ward*,
    955 F.2d 875 (4th Cir. 1992) .................................................................20

*Guirlando v. T.C.. Ziraat Bankasi A.S.*,
    602 F.3d 69 (2d Cir. 2010)....................................................................15

*Gulf Ins. Co. v. Glasbrenner*,
    417 F.3d 353 (2d Cir. 2005)................................................................6, 7

*Hester Int'l Corp. v. Federal Republic of Nigeria*,
    879 F.2d 170 (5th Cir.1989) .................................................................23

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945)..............................................................................17

*Kensington Int'l Ltd. v. Itoua*,
    505 F.3d 147 (2d Cir. 2007)..................................................................13

*In re Kozuch*,
    No. 20-11252-CGM, 2021 WL 5893994 (S.D.N.Y. Dec. 13, 2021)......................19

*Licci v. Lebanese Canadian Bank, SAL*,
    732 F.3d 161 (2d Cir. 2013)..................................................................16

*Long Side Ventures LLC v. Hempacco Co.*,
    No. 22-CV-08152-ALC, 2023 WL 6386888 (S.D.N.Y. Sept. 29, 2023) ...............23

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000)...................................................................6

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996)....................................................................17

*Nizami v. Woods*,
    263 F. Supp. 124 (S.D.N.Y. 1967) .........................................................11

*OGI Grp. Corp. v. Oil Projects Co. of Ministry of Oil*,
    No. 19-CV-2619-APM, 2020 WL 6342886 (D.D.C. 2020) ...........................11

*Olberding v. Illinois Cent. Ry. Co.*,
   346 U.S. 338 (1953).............................................................................................................7

*Orion Shipping & Trading Co. v. E. States Petro. Corp. of Panama, S.A.*,
   312 F.2d 299 (2d Cir. 1963)..............................................................................................22

*Owens v. Taliban*,
   No. 22-CV-1949-VEC, 2023 WL 2214887 (S.D.N.Y. Feb. 24, 2023)
   (Caproni, J.) ......................................................................................................................23

*Palladian Partners, L.P. v. Province of Buenos Aires*,
   No. 21-CV-5958-CM, 2022 WL 16700188 (S.D.N.Y. Nov. 3, 2022) .......................................9

*Porzig v. Dresdner, Kleinwork, Benson, N. Am. LLC*,
   497 F.3d 133 (2d Cir. 2007)..............................................................................................22

*PT Rahajasa Media Internet v. BAKTI*,
   No. 20-CV- 11035-PGG-OTW, 2022 WL 992841 (S.D.N.Y. Apr. 1, 2022).......................1, 5

*Reiss v. Société Centrale Du Groupe Des Assurances Nationales*,
   235 F.3d 738 (2d Cir. 2000)..............................................................................................13

*Republic of Argentina v. Weltover, Inc.*,
   504 U.S. 607 (1992)...........................................................................................................15

*Robles v. Holy*
   *See*, No. 20-CV-2106-VEC, 2021 WL 5999327 (S.D.N.Y. Dec. 20, 2021) ...........................14

*Saint-Amour v. Richmond Org., Inc.*,
   388 F. Supp. 3d 277 (S.D.N.Y. 2019).....................................................................................6

*Saudi Arabia v. Nelson*,
   507 U.S. 349 (1993)...........................................................................................................13

*Spar. Inc. v. Info. Res. Inc.*,
   956 F.2d 392 (2d Cir. 1992)..............................................................................................11

*Statler v. Pavarini Constr. Co.*,
   No. 90 Civ. 4222, 1990 WL 176401 (S.D.N.Y. 1990) ............................................................11

*UAB Skyroad Leasing v. OJSC Tajik Air*,
   No. 21-7015, 2022 WL 2189300, at *1-2 (D.C. Cir. June 17, 2022) .....................................16

*Uni-Top Asia Inv. Ltd. v. Sinopec Int'l Petrol. Expl. and Prod. Corp.*,
   600 F. Supp. 3d 73 (D.D.C. 2022) ......................................................................................10

*Vasquez v. Hong Kong and Shanghai Banking Corp.*,
   477 F. Supp. 3d 241 (S.D.N.Y. 2020).................................................................................18

*Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*,
   825 F.2d 709 (2d Cir. 1987)..................................................................................25

*Williams v. Nat'l Gallery of Art*,
   No. 16-CV-6978-VEC, 2017 WL 4221084 (S.D.N.Y. Sept. 21, 2017)
   (Caproni, J.) ......................................................................................................14

**Statutes**

28 U.S.C. § 1330(a)-(b) ...............................................................................................3, 15

28 U.S.C. § 1391(f)(1) ...............................................................................................7, 8, 9

28 U.S.C § 1391(f)(3) ...............................................................................................7, 10

28 U.S.C. § 1391(f)(4) ...............................................................................................11

28 U.S.C. § 1406 ...............................................................................................11

28 U.S.C. § 1605(a)(2) ...............................................................................................13

**Other Authorities**

N.Y. C.P.L.R. § 5302.01 ...............................................................................................20

N.Y. C.P.L.R. § 5304(b)(4) ...............................................................................................21

N.Y. CPLR § 5302 ...............................................................................................18, 21

N.Y. CPLR § 5304 ...............................................................................................18

Defendants (1) the Center for Provision and Management of Telecommunications and Informatics Financing, Directorate General of Post Informatics, Ministry of Communication and Information, Republic of Indonesia, formerly Office for Rural Telecommunications and Informatics, Directorate General of Posts and Telecommunications, Ministry of Communication and Information of the Republic of Indonesia ("BAKTI"), (2) the Ministry of Communication and Information, Republic of Indonesia ("MOCI"), (3) the Ministry of Finance, Republic of Indonesia ("MOF"), and (4) the Republic of Indonesia ("Indonesia") (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Amended Complaint (the "Am. Compl.") filed in the above-captioned action by plaintiff PT Rahajasa Media Internet ("Rahajasa" or "Plaintiff").

## PRELIMINARY STATEMENT

Plaintiff brings a claim against the Defendants, pursuant to New York's Uniform Foreign Country Money Judgments Recognition Act, N.Y. C.P.L.R. §§ 5301 *et seq.* ("Article 53"), for the recognition and enforcement of a summons issued by the South Jakarta District Court in Indonesia (the "Summons") in connection with a domestic Indonesian arbitral award (the "BANI Award") issued by the Indonesian National Board of Arbitration ("BANI"). This is a claim that should not have been brought anywhere outside of Indonesia, let alone in this Court. Indeed, this is Plaintiff's second attempt to seek US judicial assistance in relation to the BANI award. In December 2020, Plaintiff first sought recognition of the underlying award in this Court under the Federal Arbitration Act ("FAA"). That claim was dismissed for untimeliness. *See PT Rahajasa Media Internet v. BAKTI*, No. 20-CV-11035-PGG-OTW, 2022 WL 992841 (S.D.N.Y. Apr. 1, 2022). Now, Plaintiff seeks to do an end run around the Court's prior ruling by asserting an impermissible judgment recognition claim.

1

More importantly, Plaintiff's Indonesian bankruptcy receiver has already seized from BAKTI's bank accounts in Indonesia the amounts awarded to Rahajasa in the underlying arbitration. Because of this, the BANI Award has been satisfied and Plaintiff's judgment recognition claim is moot. Moreover, the Summons is a nullity that is no longer enforceable in Indonesia and, in turn, under any judgment recognition statute in the U.S., including New York's.

In addition, Plaintiff's attempt to enforce the Summons in this Court is nothing more than inappropriate forum shopping. Plaintiff's claim has no connection whatsoever to the United States, let alone to this district. The dispute is between Rahajasa, an Indonesian company, and BAKTI, an agency within MOCI responsible for developing telecommunications projects in Indonesia, in connection with contracts which were negotiated, performed, and litigated within Indonesia.

Under these circumstances, there are several grounds on which the Amended Complaint should be dismissed with prejudice.

First, there is no basis for venue in this district under 28 U.S.C. § 1391(f), which is the venue provision of the Foreign Sovereign Immunities Act ("FSIA") relied upon in the Amended Complaint. None of the events or omissions giving rise to Rahajasa's claim arose in or had any connection to this district, there is no property in this district that is the subject of the action, and BAKTI is not licensed to do business, nor is doing business, in this district.

Second, the Defendants are entitled to sovereign immunity under the FSIA. The only exception to immunity explicitly referred to in the Amended Complaint is the "commercial activity" exception in 28 U.S.C. § 1605(a)(2). Plaintiff alleges that "the judgment to be recognized and enforced was based upon Republic of Indonesia's commercial activity which caused a direct effect in the United States." Am. Compl. ¶ 4. However, Plaintiff does not plead any facts which, if true, would establish *any* effect in the United States, let alone a "direct" effect. To the extent

BAKTI's activities vis-à-vis Rahajasa were commercial in nature and had an effect anywhere, that place is Indonesia, and Indonesia alone. Thus, the nexus with the United States necessary for there to be jurisdiction under § 1605(a)(2) of the FSIA is entirely absent in this case.

Third, this Court may not exercise personal jurisdiction over the Defendants under these circumstances because they are entitled to sovereign immunity. *See* 28 U.S.C. § 1330(b). Moreover, in the case of BAKTI, which is an agency or instrumentality of Indonesia, there are insufficient contacts with this district to satisfy the "minimum contacts" test under the due process clause of the Fifth Amendment for the purpose of personal jurisdiction.

Fourth, the Summons of which Rahajasa seeks recognition and enforcement does not satisfy the elements of Article 53 because it is: (a) not a final judgment which grants or denies recovery of a sum of money; and (b) is no longer enforceable in Indonesia because the underlying arbitration award already has been satisfied by virtue of a November 2021 seizure of over IDR 209 billion from BAKTI's bank accounts in Indonesia.

Fifth, no cognizable claim has been asserted against any of the Defendants other than BAKTI. Defendants MOCI, MOF, and Indonesia were not involved in the dispute or in the underlying contracts between Rahajasa and BAKTI and, apart from vague and conclusory allegations that BAKTI is the "alter ego" of Indonesia, no legal or factual basis of claim is pleaded against them in the Amended Complaint.

Finally, Rahajasa no longer has possession or control over the Summons or the underlying arbitration award under Indonesian law because all its assets were transferred to its bankruptcy receiver following bankruptcy proceedings in Indonesia in October 2019. Rahajasa therefore does not have standing to bring its judgment recognition claim.

The Amended Complaint should therefore be dismissed with prejudice on any one of or all these grounds pursuant to Rules 12(b)(1), (2), (3) and (6) of the Federal Rules of Civil Procedure.

## **FACTUAL BACKGROUND**

BAKTI is the agency within MOCI that is responsible for the "KPU/USO" program, which is an Indonesian government initiative to create equal internet access and communication technology across Indonesia, with a focus on remote and underdeveloped regions.  Aldiano Decl. ¶¶ 4, 7.  As part of its mandate under the KPU/USO program, BAKTI entered into five separate contracts with Rahajasa in December 2010 and January 2012 for the provision of mobile internet service access centers for certain districts within Indonesia.  *See* Aldiano Decl. ¶ 12.

On January 26, 2015, BAKTI terminated each of the contracts with Rahajasa.  Subsequently, a formal dispute was initiated by Rahajasa and heard before a BANI tribunal on March 20, 2017.  On July 27, 2017, the BANI tribunal issued the BANI Award in favor of Rahajasa in the amount of IDR 209,923,787,027.  *See* Am. Compl. Ex. B2, p. 33.[1]  On August 15, 2017, the award was registered with the South Jakarta District Court. *See* Am. Compl, Ex. D, p. 6.

On October 30, 2019, in an action filed by Bank Pembangunan Daerah Jawa Barat dan Banten against Rahajasa in the Commercial Court of the Central Jakarta District Court, the court declared Rahajasa bankrupt and appointed a receiver to administer Rahajasa's assets.  Pursuant to the court's order and Indonesia's bankruptcy law, Rahajasa's assets, including the amount owed to it by BAKTI under the BANI Award, came under the management and control of the receiver.

Following its appointment, the receiver brought an action in the Central Jakarta District Court to collect the sums owed under the BANI Award.  Ex. B.  In that action, the court determined

---

[1]    The Tribunal also ordered BAKTI to pay interest charges and fines to PT Bank Pembangunan Daerah Jawah Barat (Bank BJB) in connection with the financing of the KPU/USO Program in the amount of IDR 15,742,182,401.

that the receiver was entitled to recover from BAKTI the IDR 209 billion awarded to Rahajasa in the BANI arbitration.  *See id.* at p. 5.  The court authorized a bailiff to execute on the award and seize BAKTI's assets in that amount.  Ex. C.

On November 26, 2021, based on an execution order issued by the Central Jakarta District Court, the court's bailiff executed against three of BAKTI's accounts held at the Harmoni Branch office of PT Bank Negara Indonesia (Persero) Tbk and seized IDR 209,923,787,027, in satisfaction of the BANI Award.  Ex. D; Ex. E.

Despite these seizures, in June 2022, lawyers claiming to act for and on behalf of Rahajasa submitted an *ex parte* application to enforce the BANI Award with the South Jakarta District Court. On September 14, 2022, the South Jakarta District Court granted the application and issued the Summons in which it appointed a bailiff to summon BAKTI to appear before the Court to be officially warned to comply with the BANI Award.  There is no indication in any of the *ex parte* submissions made to the court that it was made aware of the seizure of funds from BAKTI's bank accounts in November 2021.

On December 30, 2020, Rahajasa commenced an action in this Court seeking recognition and enforcement of the BANI Award under Chapter 2 of the FAA.  None of the Defendants appeared in that action.  On March 31, 2022, Judge Gardephe determined that the claim was time-barred by the three-year statute of limitations in 9 U.S.C. § 207 and dismissed the action with prejudice.  *See PT Rahajasa Media Internet*, 2022 WL 992841, at *8.

Rahajasa now seeks a second bite at the cherry by bringing a state law claim for recognition of the Summons on the BANI Award under Article 53.

## STANDARD OF REVIEW

Federal courts are courts of limited jurisdiction and pursuant to Rule 12(b)(1), an action requires dismissal "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). When a defendant seeks dismissal under Rule 12(b)(1), the court should resolve the jurisdictional challenge first, since it must dismiss the complaint entirely if subject matter jurisdiction is lacking. *See Saint-Amour v. Richmond Org.*, 388 F. Supp. 3d 277, 286 (S.D.N.Y. 2019). In cases involving foreign states, or foreign state agencies and instrumentalities, subject matter jurisdiction is governed by the FSIA. *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989). Foreign states are immune from suit in the United States unless a plaintiff can demonstrate that one of the exceptions to immunity enumerated in the FSIA applies. *See id.* (citing *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 489-90 (1983)).

This Court employs the same standard of review under Rules 12(b)(2) and 12(b)(3) in connection with lack of personal jurisdiction and improper venue. *See Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005). The plaintiff bears the burden of making a prima facie case showing that personal jurisdiction and venue are proper. *See id.*

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when "the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S at 663. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

## ARGUMENT

## I.    VENUE IN THIS DISTRICT IS IMPROPER

There is no venue in this district under 28 U.S.C. § 1391(f), which is the applicable venue provision of the FSIA.  Courts must construe the federal venue statute in § 1391 strictly.  *Olberding v. Illinois Cent. Ry. Co.*, 346 U.S. 338, 340 (1953) ("The requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy, is to be given a 'liberal' construction.").

In the Amended Complaint, Plaintiff does not specify which subsection of § 1391(f) it relies upon for venue.  Subsections (1) and (3) are addressed here because they are the only grounds that could conceivably apply to this action.  Under subsection (1), a civil action may be brought against a foreign state "in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  28 U.S.C. § 1391(f)(1).  Under subsection (3), venue is proper "in any judicial district in which the agency or instrumentality is licensed to do business or is doing business, if the action is brought against an agency or instrumentality of a foreign state." 28 U.S.C § 1391(f)(3).

### A.  The Events Giving Rise to the Claim Did Not Occur in this District

Starting with subsection (1), in construing the language of § 1391(b)(2), which has identical language to § 1391(f)(1), the Second Circuit has directed district courts to "take seriously" the adjective "substantial," and emphasized that "for venue to be proper, *significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question."  *Gulf Ins. Co.*, 417 F.3d at 357 (emphasis in original).  Moreover, "[e]vents or omissions that might only have some tangential connection with the dispute in litigation are not enough" to satisfy the

requirements of § 1391(b)(2).  *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994).

Plaintiff's foreign judgment recognition claim, and the arbitration and contracts underlying it, have no connection whatsoever to the United States or to this district, let alone a "substantial" connection or even a "tangential" one.  The underlying contracts were between Indonesian parties in connection with a telecommunications project carried out exclusively within Indonesia. Moreover, the arbitration between the parties before BANI was a domestic Indonesian arbitration with no connection to any other country, let alone to the United States or this district.

At best, the Amended Complaint alleges in connection with venue that there has been a "historic partnership" between BAKTI and banks "owned and operated by the Republic of Indonesia within this district" and that "BAKTI KOMINFO manages revenue from the KPU/USO program by investing those funds in short-term investment instruments with its partner bank, Bank BNI, in this District." Am. Compl. ¶ 6.

Even if true (which is denied), none of these alleged connections with this district is a "substantial part of the events or omissions giving rise to the claim." The events giving rise to the judgment recognition claim had nothing to do with the alleged banking and investment activities in this district.  Rather, the events material to the claim involved contract negotiations and contract performance within Indonesia culminating in an arbitration award and a subsequent Summons on that award, both of which were rendered in Indonesia.

Under these circumstances, there is no venue in this district under the first limb of § 1391(f)(1).  Other courts have found venue to be improper in similar foreign judgment recognition cases based on foreign arbitral awards.  For example, in *Comm'n Imp. Exp. S.A. v. Republic of Congo*, No. 11-CV-6176-JFK, 2012 WL 1468486, at *3 (S.D.N.Y. Apr. 27, 2012), Judge Keenan

held that venue was improper in this district in circumstances where it was alleged that the defendant engaged in certain banking activities in New York. Judge Keenan noted that the banking activities were not "events" which gave rise to the judgment recognition claim. Rather, the "events" underlying that claim were: (1) the underlying contracts, (2) the arbitration award, and (3) the foreign judgment recognizing the arbitral award, none of which had any connection to the United States, let alone to this district. The same is true here. *See also Palladian Partners, L.P. v. Province of Buenos Aires*, No. 21-CV-5958-CM, 2022 WL 16700188, at *4 (S.D.N.Y. Nov. 3, 2022) (holding under § 1391(f)(1), "the alleged asset [in the district] must be the asset that forms the basis of the Plaintiff's claim.").

### B.  There is No Property in this District that is the Subject of this Action

As for the second limb of § 1391(f)(1), there is no "property that is the subject of the action" in this district, let alone "a substantial part" of such property. This provision "governs venue in *in rem* actions concerning a specific and identifiable piece of property." *Comm'n  Imp. Exp. S.A.*, 2012 WL 1468486, at *4.

This is not an action which concerns a "specific and identifiable piece of property." It is an action seeking recognition of an Indonesian court Summons in connection with an Indonesian arbitration award regarding alleged debts payable in Indonesia arising under Indonesian contracts.

Courts have also soundly rejected the proposition that property that exists in a district which may be the subject of asset enforcement activities is sufficient to establish venue. *See id.* at *2; *Palladian Partners, L.P.*, 2022 WL 16700188, at *4.

Therefore, there is no venue in this district under § 1391(f)(1).

### C.  BAKTI is Not Licensed to Do Business, Nor Is It Doing Business In this District

Venue under § 1391(f)(3) only applies to an agency or instrumentality of a foreign state. As such, this provision applies to BAKTI but not to any of the other Defendants.  Under this provision, venue will lie "in any judicial district in which the agency or instrumentality is licensed to do business or is doing business."  28 U.S.C. § 1391(f)(3).

BAKTI is not licensed to do business in New York, and it is not even alleged that it is. Neither is BAKTI "doing business" in this district.  The only allegation in this regard in the Amended Complaint is that "BAKTI KOMINFO manages revenue from the KPU/USO program by investing those funds in short-term investment instruments with its partner bank, Bank BNI, in this District."  Am. Compl. ¶ 6.

Not only is this allegation untrue (*see* Aldiano Decl. ¶ 11), but it is also insufficient to establish venue under § 1391(f)(3).  For venue to lie in a particular district under subsection (3), an agency or instrumentality must be "doing business" in the forum such that it could be required to comply with the state's local licensing scheme.  *See Eli Lilly & Co. v. Home Ins. Co.*, 794 F.2d 710, 721 (D.C. Cir. 1986), *cert. denied*, 479 U.S. 1060 (1987) ("a corporation is 'doing business' under § 1391(c) whenever the Constitution would permit a state to require a foreign corporation to comply with a licensing scheme."); *Uni-Top Asia Inv. Ltd. v. Sinopec Int'l Petrol. Expl. and Prod. Corp.*, 600 F. Supp. 3d 73, 79 (D.D.C. 2022) (following *Eli Lilly*).

At most, BAKTI is alleged to have made some investments in a bank in New York (which it has not).  Such activities would not subject it to regulation in New York or otherwise rise to the level of "doing business" in the jurisdiction.  *See generally Crystallex Int'l Corp. v. PDV Holding Inc.*, No. 15-CV-1082-LPS, 2019 WL 6785504, at *10 (D. Del. 2019) (not every private act taken by a sovereign in the market constitutes "doing business" or would require a license).

Accordingly, there is no venue in this district under § 1391(f)(3).

**D.  The Complaint Should be Dismissed for Lack of Venue**

Since venue is improper in this district, Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a) direct the Court to dismiss this case.  Dismissal should not be ordered only if an "interest of justice" compels the alternative relief of a transfer "to any district . . . in which [the action] it could have been brought."  28 U.S.C. § 1406.  That exception does not apply here.

In respect of BAKTI, there is no district in which Plaintiff's judgment recognition claim "could have been brought" because the claim has no connection with any district within the United States nor is BAKTI licensed to do business or doing business anywhere in the United States.  *See* Aldiano Decl. ¶¶ 9, 11.  Moreover, 28 U.S.C. § 1391(4), which provides for venue "in the United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof," does not apply to BAKTI because it is an agency or instrumentality of Indonesia.  *See* 28 U.S.C. § 1391(f)(4); *OGI Grp. Corp. v. Oil Projects Co. of Ministry of Oil*, No. 19-CV-2619-APM, 2020 WL 6342886, *8-11 (D.D.C. 2020) ("[C]onsistent with the plain statutory text read in context, this court concludes that Section 1391(f)(4) is limited to a foreign state and its political subdivisions and does not apply to a foreign state's instrumentalities.  Venue therefore does not lie in the District of Columbia under Section 1391(f)(4).").  Thus, there is no district to which the Court could transfer the case against BAKTI.  The Court therefore has no choice but to dismiss the action against BAKTI with prejudice.

As for MOCI, MOF and Indonesia, it is accepted that Plaintiff's action could have been brought against them in the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1391(4); however, no "interest of justice" favors transfer in the circumstances.[2]

---

[2]    There is no applicable "interest of justice" factor here given that there is no limitations issue and because Plaintiff's selection of venue cannot have been based on a good faith and reasonable belief that venue was proper, and Plaintiff could have foreseen that this was an improper forum.  *Compare Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962) (allowing transfer due to injustice relating to the expiry of the limitations period); *Statler v. Pavarini*

Consequently, Rule 12(b)(3) mandate dismissal of this action with prejudice.

## II.    THE DEFENDANTS ARE IMMUNE FROM SUIT UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT

The FSIA is the sole basis for establishing jurisdiction over a foreign state.  *See Amerada Hess Shipping Corp.*, 488 U.S. at 434.  Foreign states are immune from suit in the United States unless a plaintiff can demonstrate that one of the exceptions to immunity enumerated in the FSIA applies.  *See id.* (citing *Verlinden B.V.*, 461 U.S. at 490).

In the Amended Complaint, Rahajasa refers to the exceptions to sovereign immunity in 28 U.S.C. §§ 1605(a)(1) and (2) in order to overcome the presumption of sovereign immunity.  *See* Am. Compl. ¶ 4.  The only stated basis for the application of these exceptions is the allegation that "the judgment to be recognized and enforced was based upon Republic of Indonesia's commercial activity which caused a direct effect in the United States."  *Id.*  Neither exception applies here.

### A.  Defendants Have Not Waived Sovereign Immunity

Under § 1605(a)(1), a foreign state shall not enjoy sovereign immunity in any case "in which the foreign state has waived its immunity either explicitly or by implication."  28 U.S.C. § 1605(a)(1).[3]  Apart from a single reference to this subsection in the Amended Complaint, Am. Compl. ¶ 4, Plaintiff does not plead any basis whatsoever for the application of this exception. Nor could it: there has been no explicit or implicit waiver of immunity by Defendants in BAKTI's contracts with Rahajasa nor in any of BAKTI's dealings with Rahajasa.

---

*Constr. Co.*, No. 90 Civ. 4222, 1990 WL 176401, at *2 (S.D.N.Y. 1990) (transferring action because "plaintiffs would lose their right to bring suit due to the expiration of the applicable statue of limitations) *with Nizami v. Woods*, 263 F. Supp. 124, 125 (S.D.N.Y. 1967) (dismissing action where there were no factors present weighing in favor of transfer); *Spar. Inc. v. Info. Res. Inc.*, 956 F.2d 392, 394 (2d Cir. 1992) (dismissing case because transfer "would reward plaintiffs for their lack of diligence in choosing an improper forum").

[3]    A "foreign state" except as used in 28 U.S.C. § 1608, includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined by 28 U.S.C. § 1603(b).

**B.  The "Commercial Activity" Exception to Sovereign Immunity Does Not Apply**

The "commercial activity" exception under § 1605(a)(2) is also inapplicable.  The only relevant commercial activity alleged by Plaintiff (i.e. BAKTI's contractual dealings with Rahajasa and subsequent dispute resolution proceedings) took place in Indonesia with no nexus whatsoever with the United States.

In these circumstances, § 1605(a)(2) provides that a foreign state will not be entitled to immunity "based upon . . . an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States."  28 U.S.C. § 1605(a)(2).

Rahajasa must establish three elements under Section 1605(a)(2) to overcome the presumption of immunity: (1) that Defendants engaged in a commercial activity, (2) that the cause of action is "based upon" that commercial activity, and (3) that the commercial activity caused a "direct effect" in the United States.  *See* 28 U.S.C. § 1605(a)(2); *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120, 134 (2d Cir. 2022).

Rahajasa cannot establish (and has not even pleaded) the second two elements.

As to second element, the Supreme Court has held that the phrase "based upon" "calls for something more than a mere connection with, or relation to, commercial activity."  *See Saudi Arabia v. Nelson*, 507 U.S. 349, 357-58 (1993).  Rather, "based upon" requires "a degree of closeness between the acts giving rise to the cause of action and those needed to establish jurisdiction that is considerably greater than common law causation requirements."  *Kensington Int'l Ltd. v. Itoua*, 505 F.3d 147, 155 (2d Cir. 2007) (quoting *Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp.*, 204 F.3d 384, 390 (2d Cir. 2000)).  The Second Circuit has further explained that "based upon" requires a "significant nexus" between the commercial activity and the cause of action.  *See Reiss v. Société Centrale Du Groupe Des Assurances Nationales*, 235

F.3d 738, 747 (2d Cir. 2000).   The Second Circuit has also made clear that "[a]s a threshold step in assessing plaintiff's reliance on the 'commercial activity' exception, *we must identify the act of the foreign sovereign State that serves as the basis for plaintiffs claims*."   *Garb v. Republic of Poland*, 440 F.3d 579, 586 (2d Cir. 2006) (emphasis added) (citing *Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1109 (5th Cir. 1985) (explaining that to determine the basis of a claim, a court should focus on the "gravamen of the complaint")); *Williams v. Nat'l Gallery of Art*, No. 16-CV-6978-VEC, 2017 WL 4221084, at *6 (S.D.N.Y. Sept. 21, 2017) (finding that the "gravamen" of plaintiff's claim did not concern commercial activity carried out in the United States and therefore cannot be the basis of the commercial activity exception) (Caproni, J.); *Robles v. Holy See*, No. 20-CV-2106-VEC, 2021 WL 5999327 (S.D.N.Y. Dec. 20, 2021) (same) (Caproni, J.).

In the Amended Complaint, Rahajasa appears to rely upon BAKTI's and Indonesia's alleged banking activities in this district under the "commercial activities" exception.[4]  *See* Am. Compl. ¶¶ 5-6.  Even if true (which is denied), these alleged activities do not form the basis of Plaintiff's foreign judgment recognition claim.

The gravamen of Plaintiff's cause of action is BAKTI's alleged failure to satisfy an Indonesian arbitration award arising out of its contracts with Rahajasa, which subsequently led to issuance of the Summons of which Rahajasa seeks recognition and enforcement.  Rahajasa's claim therefore has no connection, let alone is it "based on," any of the alleged commercial activity pleaded by Rahajasa.

As to the third element, Plaintiff's position is untenable because none of these activities had a "direct effect" in the United States.

---

[4]    Rahajasa seeks to rely on certain alleged banking activities with respect to state-owned banks in which Indonesia is a majority shareholder.  As explained in the Declaration of Professor Juwana, state-owned entities are entirely separate enterprises from the State and actions of the state-owned entity cannot be deemed actions of the State. Juwana Decl. at ¶ 29.

An extra-territorial commercial activity will have a "direct effect in the United States" if there is an "immediate consequence" of the defendant's activity which impacts the United States. *See Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 618 (1992). A consequence is immediate where there is no "intervening element" and it "flows in a straight line without deviation or interruption." *See Guirlando v. T.C.. Ziraat Bankasi A.S.*, 602 F.3d 69, 75 (2d Cir. 2010) (citing *Martin v. Republic of South Africa*, 836 F.2d 91, 95 (2d Cir. 1987)).

Here, the effects of BAKTI's alleged "commercial activity" arose solely in Indonesia: the relevant contracts were negotiated, performed and allegedly breached within Indonesia; the underlying arbitral award was issued in Indonesia following a purely domestic arbitration; the Summons was issued by an Indonesian court and its scope was limited to Indonesia; and the allegedly aggrieved party, Rahajasa, is an Indonesian limited liability company domiciled in Jakarta apparently with no presence in or connections to the United States. Therefore, the "commercial activity" exception to sovereign immunity does not apply and Defendants are immune from the jurisdiction of this Court pursuant to 28 U.S.C. § 1604. In turn, there is no subject matter jurisdiction pursuant to 28 U.S.C. § 1330(a).

## III.    THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER THE DEFENDANTS

To grant relief under Article 53 of New York's Uniform Foreign Money Judgments Recognition Act, a court must have either *in personam* or *in rem* personal jurisdiction over a defendant in circumstances where the defendant raises a "colorable statutory basis for denying enforcement." *AlbaniaBEG Ambient Sh.p.k. v. Enel S.p.A.*, 73 N.Y.S.3d 1, 3 (1st Dep't 2018). As discussed below, there are several compelling grounds for denying enforcement of the Summons.

**A. The Court Lacks Personal Jurisdiction Over the Defendants**

A court may only exercise personal jurisdiction over a foreign state where subject matter jurisdiction exists. *See* 28 U.S.C. § 1330(a)-(b); *Despotovich v. Republic of Croatia*, No. 21-CV-50-AT, 2022 WL 3447989, at *2 (S.D.N.Y. Aug. 17, 2022) (citing *Verlinden B.V.*, 461 U.S. at 489, n. 14 (holding that if the action does not fall within one of the FSIA's statutory exceptions to immunity, federal courts lack subject matter and personal jurisdiction over the claim and the foreign state defendant).

As discussed above, there is no subject matter jurisdiction in this case. It follows that this Court does not have personal jurisdiction over any of the Defendants.

While personal jurisdiction over foreign states and their political subdivisions is governed solely by 28 U.S.C. § 1330(b), establishing personal jurisdiction over a foreign state agency or instrumentality requires additional analysis. As discussed above, BAKTI is an agency or instrumentality of Indonesia.

Agencies and instrumentalities "enjoy a 'presumption of separateness' from the affiliated foreign state . . . [and are] protected by the Due Process Clause of the Fifth Amendment." *See UAB Skyroad Leasing v. OJSC Tajik* Air, No. 21-7015, 2022 WL 2189300, at *1-2 (D.C. Cir. June 17, 2022). Due process considerations require that personal jurisdiction may be exercised over an agency or instrumentality only in circumstances where the plaintiff demonstrates that the agency or instrumentality has "minimum contacts with the district court's forum or is an alter ego of the [sovereign state]" such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 50 (2d Cir. 2021); *Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 169 (2d Cir. 2013).[5]

---

[5]    For the reasons discussed below, BAKTI is not an alter ego of Indonesia and, therefore, the Court may not exercise personal jurisdiction on this basis.

The "minimum contacts" test is not satisfied here because BAKTI does not have *any* contacts with this district.  At its highest, Rahajasa's case is that "financial institutions, owned and operated by Republic of Indonesia within the District, have had an historic partnership with BAKTI KOMINFO," and that BAKTI invests "funds [from the KPU/USO program] in short-term investment instruments with its partner bank, Bank BNI, in this District." Am. Compl. ¶ 6.

It is not understood what is meant by "historic partnership" and the allegation is so vague that it could not possibly satisfy the most basic pleading standard.  In any event, as the Declaration of Darian Aldiano makes clear, BAKTI's operations in implementing the KPU/USO program are entirely domestic.  Aldiano Decl. ¶¶ 7-11.  It does not hold accounts in any New York banks, nor does it invest any of the funds which it manages as part of the KPU/USO program in New York. *See* Aldiano Decl. ¶¶ 9, 11.  It also does not have any "partnership" with any financial institutions in New York, including with any state-owned banks operating within this district.  *See id.* at 11.

Under these circumstances, there can be no finding of "minimum contacts" to establish personal jurisdiction over BAKTI.  *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (requiring a defendant to litigate substantive issues in a forum where it maintains no property and where it has no contacts would "offend [the] traditional notions of fair play and substantial justice.") (internal quotations omitted).

Even accepting the facts in the Amended Complaint as true, Plaintiff has not established that BAKTI has the requisite contacts necessary for the Court to exercise personal jurisdiction over it.  That is principally because, as the Second Circuit has held, for the purposes of determining whether a defendant's contacts with a forum are sufficient to justify the court's exercise of personal jurisdiction, 'specific jurisdiction' will exist when a suit arises out of or relates to defendant's

contacts with the forum. *See Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).

Rahajasa's claim clearly does not arise of out of BAKTI's alleged contacts with this forum. As noted above, Rahajasa's cause of action arises out of domestic Indonesian contracts, a domestic arbitral proceeding and a domestic court proceeding which resulted in the issuance of the Summons in relation to assets located in Indonesia. The only alleged nexus between this district and the underlying contracts is that BAKTI allegedly invests KPU/USO funds with a bank in New York. Clearly, this is not the activity out of which Rahajasa's recognition claim arises.

Furthermore, courts in this Circuit have held that mere maintenance of a bank account in the forum is not enough to reflect a defendant's "purposeful availment" of a forum such that a court may exercise personal jurisdiction. *See Vasquez v. Hong Kong and Shanghai Banking Corp.*, 477 F. Supp. 3d 241, 257 (S.D.N.Y. 2020) (finding that use of a bank account alone is insufficient to establish personal jurisdiction over a nonresident). For these reasons, the Court may not exercise of personal jurisdiction over BAKTI.

Finally, Plaintiff does not plead any basis for *in rem* jurisdiction over any Defendants other than Indonesia. *See* Am. Compl. ¶ 5. There is no allegation that any of the other Defendants own property in New York and, as discussed above, BAKTI does not invest any funds in New York in connection with the KPU/USO program (*see* Am. Compl. ¶ 6) or for any other purpose, nor does it have any other property in this district.

## IV.    THE SUMMONS IS NOT ENFORCEABLE UNDER THE FOREIGN COUNTRY MONEY JUDGMENTS RECOGNITION ACT

Rahajasa's claim for recognition and enforcement of the Summons arises under Article 53 of New York's Uniform Foreign Money Judgments Recognition Act. To obtain recognition and enforcement of a foreign money judgment under Article 53 a plaintiff must establish, *inter alia*,

that the judgment: (1) grants or denies recovery of a sum of money, and (2) is final, conclusive, and enforceable under the law of the foreign country where the judgment was rendered.  N.Y. C.P.L.R. § 5302.  Additionally, the judgment should not be subject to any of the exceptions to enforcement under N.Y. C.P.L.R. § 5304.  Rahajasa's claim fails because it does not satisfy the elements of Article 5302 and is subject to an exception to enforcement under Article 5304.

### A.  The Award Does Not Grant or Deny a Sum of Money

As to element (1), the Summons does not grant or deny a sum of money.  It merely "grant[s] the execution request of [BANI] from the aforementioned Execution Applicant" and orders "the Registrar of South Jakarta District Court to appoint a Bailiff/Replacement Bailiff at the District Court, to carry out an official summon to [BAKTI] to appear before us, Chairman of South Jakarta District Court" on a specified date for purpose of "implement[ing] the Decision of [BANI] dated 27 July 2017."  Am. Compl., Ex. D, p. 7; Juwana Decl. ¶¶ 15-16.  No sums are referred to in the operative part of the Summons, let alone "granted" or "denied."

As explained by Professor Hikmahanto Juwana, the Summons is not a judgment granting or denying a sum of money but is instead a step in the process of executing on an award under which the defendant is summoned to be reprimanded or warned by the court to voluntarily comply with the award within a specific time period.  The next step in this process is for the award creditor to obtain a "Stipulation" permitting the court bailiff to forcefully execute on the award (which is akin to a writ of execution).  Juwana Decl. ¶ 17.

### B.  The Summons is Not Final, Conclusive and Enforceable Where Rendered

As to element (2), the Summons is not final and conclusive and, indeed, it is not enforceable in Indonesia.

To determine whether a foreign judgment is final, conclusive and enforceable where rendered, this Court must look to the law of the foreign country where the judgment was issued. *See e.g.*, *Banca di Credito Cooperativo di Civitanova Marche e Montecosaro Soc. Cooperativa v. Small*, 852 Fed. App'x 15, 17 (2d Cir. 2021); *In re Kozuch*, No. 20-11252-CGM, 2021 WL 5893994, at *4 (S.D.N.Y. Dec. 13, 2021) ("Plaintiff has failed to meet his burden of demonstrating that the judgment remains effective in Israel . . . [and] has not proved his burden of demonstrating, as a matter of law, that the judgment is enforceable, where rendered") (internal quotations omitted). Under New York law, a court may not enforce a foreign judgment that cannot itself be enforced in the foreign jurisdiction in which it was issued. *See Small*, 852 Fed. App'x at 18. To hold otherwise would grant a judgment greater force in the United States then it would have in its issuing country. *Id.* (citing 11 Jack B. Weinsten et. al., New York Civil Practice: N.Y. C.P.L.R. ¶ 5302.01 (2019) ("Generally, with respect to enforceability, a judgment is not entitled to any greater rights within the forum state than it would enjoy in its home jurisdiction.").

As noted above, the Summons is not a final or conclusive judgment: it is a step in the process of executing on the BANI Award under which BAKTI was summoned to be reprimanded or warned by the court to voluntarily comply with the award within 8 days. *See* Juwana Decl. ¶¶ 15-16.

Furthermore, because BAKTI's assets have already been seized in satisfaction of the BANI Award, the Summons is no longer effective. *See Guinness PLC v. Ward*, 955 F.2d 875, 888-98 (4th Cir. 1992) (finding a judgment debtor may raise accord and satisfaction to establish that a judgment has been satisfied and/or rendered unenforceable in the rendering court or the enforcing court).

On October 30, 2019, the Commercial Court of the Central Jakarta District Court placed Rahajasa in bankruptcy "along with all its legal consequences" and appointed a receiver to take control over and administer Rahajasa's assets. Ex. A, p. 34. Under Indonesian law, where a party enters into bankruptcy and a receiver is appointed, only the receiver is entitled to collect on the bankrupt entity's debts. *See* Purba Decl. pp. 1-2. Therefore, as of October 2019, Rahajasa's management had no authority to recover from BAKTI sums owed under the BANI Award.

Moreover, on November 19, 2021, Rahajasa's receiver, as the proper party entitled to enforce the BANI Award and collect monies on it, brought an action in the Central Jakarta District Court seeking to collect the amounts awarded to Rahajasa under the BANI Award. Crucially, the Central Jakarta District Court issued an order which affirmed that Rahajasa "has lost its rights to control and manage all the assets of PT Rahajasa Media Internet (in bankruptcy), hereinafter becoming the responsibilities of the Execution Petitioners as the Receiver Team for PT Rahajasa Media Internet (in bankruptcy)." Ex. B, p. 5. A bailiff was then appointed to carry out the execution. Ex. C.

On November 26, 2021, a bailiff forcibly executed the amount of IDR 209,923,787,027 from three BAKTI bank accounts held at PT Bank Negara Indonesia (Persero) Tbk, Harmoni Branch Office in full satisfaction of the amount owed to Rahajasa under the BANI Award. The Minutes documenting the execution are attached hereto as Exhibit C. *See also* Purba Decl. p. 6.

As explained by Professor Juwana, the effect of this asset seizure is to render the Summons ineffective such that Rahajasa would not be able to obtain a Stipulation permitting seizure of BAKTI's assets (i.e. the final step in the enforcement process in Indonesia). *See* Juwana Decl. ¶ 27.

In light of this, Plaintiff's claim is moot after having been satisfied, and the Summons on which Plaintiff's claim is based is no longer enforceable "where rendered."  N.Y. C.P.L.R. § 5302.

### C.  The Summons Conflicts with a Final and Conclusive Judgment

Article 53 provides that a court may not recognize a foreign judgment where "the judgment conflicts with another final and conclusive judgment."  N.Y. C.P.L.R. § 5304(b)(4).

Here, the Summons is in direct conflict with both the Indonesian Commercial Court's bankruptcy decision (under which possession and control of the BANI Award passed to Rahajasa's receiver) and the Central Jakarta District Court's order authorizing the execution of the BANI Award on the application of Rahajasa's receiver (pursuant to which the sums awarded to Rahajasa were satisfied through the seizure of funds from BAKTI's bank accounts).  Accordingly, Rahajasa's claim should be dismissed with prejudice for failure to state a claim under Article 53.

## V.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST THE REPUBLIC OF INDONESIA AND ITS MINISTRIES

The Amended Complaint does not plead any cognizable claim against MOCI, MOF and Indonesia.  *See Twombly*, 550 U.S. at 555-56; *Iqbal*, 556 U.S. at 676 (finding that a plaintiff must prove that each defendant committed the alleged harm).  The Amended Complaint itself makes clear that the underlying contracts, the BANI arbitration, and the Indonesian court proceedings leading to the Summons were only between Rahajasa and BAKTI.  Am. Compl., Ex. A-D. Accordingly, the purported judgment recognition claim – which is based on these contracts and proceedings – can only be asserted against BAKTI, the alleged judgment/award debtor.  *See generally Orion Shipping & Trading Co. v. E. States Petro. Corp. of Panama, S.A.*, 312 F.2d 299, 300-01 (2d Cir. 1963) (affirming an order vacating an award requiring nonparty guarantor to pay contract damages); *Porzig v. Dresdner, Kleinwork, Benson, N. Am. LLC*, 497 F.3d 133, 140-41 (2d Cir. 2007) (vacating an award requiring a nonparty attorney to return contingency fee to pay).

The only apparent basis upon which the judgment recognition claim is asserted against MOCI, MOF and Indonesia is a vague assertion in the Amended Complaint that BAKTI and the ministries are "alter egos" of Indonesia "because the Republic of Indonesia controls the Ministry of Finance, the Ministry of Communication and Information and BAKTI KOMINFO. Neither Ministry of Finance, Ministry of Communication and Information, nor BAKTI KOMINFO are independent entities from Indonesia." Am. Compl. ¶ 3.

This "alter ego" theory fails for both lack of particularity and legal insufficiency.

The Amended Complaint concedes that BAKTI is "an agency and/or a political subdivision of the Republic of Indonesia." Am. Compl. ¶ 3. BAKTI is therefore entitled to a presumption of independence from the Republic of Indonesia and its ministries. *See First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 627 (1983) ("During its deliberations, Congress clearly expressed its intention that duly created instrumentalities of a foreign state are to be accorded a presumption of independent status."); *Hester Int'l Corp. v. Federal Republic of Nigeria*, 879 F.2d 170, 176 (5th Cir.1989) ("[T]he presumption of independent status [of agencies and instrumentalities] is not to be lightly overcome") (internal citations omitted). The plaintiff may overcome the presumption "by demonstrating that the instrumentality is the agent or alter ego of the foreign state." *Dale v. Colagiovanni*, 443 F.3d 425, 429 (5th Cir.2006). This requires a showing that "the state exercises day-to-day control over the agency." *Id.*

In the Amended Complaint, Plaintiff does not plead *any* facts whatsoever which, if true, would overcome the presumption of BAKTI's independence. All that is alleged is that the Republic of Indonesia "controls" BAKTI. Am. Compl. ¶ 3. It is not alleged that Indonesia and its ministries exercise day-to-day control over BAKTI nor are there any other allegations that would rebut the presumption of BAKTI's independence. Without more, conclusory allegations such as

23

these do not satisfy the applicable pleading standard. *See Owens v. Taliban*, No. 22-CV-1949-VEC, 2023 WL 2214887, at *5 (S.D.N.Y. Feb. 24, 2023) (reasoning that a plaintiff's conclusory allegations will not be enough to support an alter ego allegation) (Caproni, J.); *Long Side Ventures LLC v. Hempacco Co.*, No. 22-CV-08152-ALC, 2023 WL 6386888, at *10 (S.D.N.Y. Sept. 29, 2023) ("purely conclusory allegations of alter ego status will . . . not survive a motion to dismiss") (internal citations omitted); *Del Castillo v. PMI Holdings N. Am. Inc.*, No. 14-CV-03435, 2016 WL 3745953, at *12 (S.D. Tex. July 13, 2016) (finding that where a complaint only makes a "collective, conclusory allegation," plaintiff cannot establish alter ego).

What is more, the allegations in the Amended Complaint *support* BAKTI's independence from Indonesia and its ministries: Plaintiff notes that it negotiated the relevant contracts directly with BAKTI, it agreed to arbitrate any disputes under those contracts solely with BAKTI, it arbitrated its claims solely against BAKTI, and it sought and obtained the Summons against BAKTI only. It is telling (and fatal to its alter ego theory) that at no point in the arbitral and court proceedings in Indonesia did Plaintiff pursue its alleged debts and claims against any entity other than BAKTI.

In fact, BAKTI is an independent agency as described by 28 U.S.C. § 1603(b). BAKTI's enabling statute specifically provides it with the independent authority to carry out its mandate. "[I]t selects and enters into contracts on its own behalf and through its own procurement process, it can sue and be sued under those contracts, it manages its own budget, it oversees and manages its relationships with third party providers and can (and does) hold property in its own name." Aldiano Decl. ¶ 5. For these reasons, the claims asserted against MOCI, MOF and Indonesia and its ministries should be dismissed with prejudice.

## VI.    RAHAJASA HAS NO STANDING TO BRING ITS CLAIM

Because of its bankruptcy in Indonesia, Rahajasa does not have possession and control over its assets, including the BANI Award.  *See* Ex. A, B.  The Central Jakarta District Court affirmed that Rahajasa has "lost its rights to control and manage all [its] assets . . . (in bankruptcy), hereinafter becoming the responsibilities of the Execution Petitioners as the Receiver Team".  Ex. B, p. 5.  Therefore, Rahajasa did not have standing in Indonesia at the time it applied for the Summons nor does it have standing before this Court to seek enforcement of the Summons.

If this is disputed by Rahajasa, the issue is a matter for the courts of Indonesia to which this Court must defer under principles of comity.  *See Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 711-15 (2d Cir. 1987) (holding that comity considerations oblige the courts of the United States to defer to a bankruptcy proceeding of another country in connection with the enforcement of an arbitration award and a money judgment).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Amended Complaint with prejudice.

Dated: October 31, 2024
Washington, D.C.

Respectfully submitted,

*/s/ Jesse D.H. Sherrett*

Jesse D.H. Sherrett (NY Bar No. 4908935)
ALLEN OVERY SHEARMAN STERLING US LLP
1101 New York Avenue, NW
Washington, D.C. 20005
Tel.:           (202)           508-8084
Email: jesse.sherrett@aoshearman.com

*Counsel for Defendants*

25