UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

PT RAHAJASA MEDIA INTERNET,

                Plaintiff,

                                                Civil Action No.: 1:24-cv-04643-VEC

   -against-

Center for Provision and Management of
Telecommunications and Informatics
Financing, Directorate General of Post
and Informatics, Ministry of Communication
and Information, Republic of Indonesia
("BP3TI") formerly Office for Rural
Telecommunications and Informatics,
Directorate General of Posts and
Telecommunications, Ministry of Communication
and Information of the Republic of Indonesia,
aka, BAKTI KOMINFO, Ministry of
Communication and Informatics of the Republic
of Indonesia, Ministry of Finance, Republic
of Indonesia, and Republic of Indonesia.

                              Defendants.

_____


## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

 

Law Office of Bridget Butler, Esq.
757 Third Avenue, 20th Floor
New York, New York 10017
Tel.: (917) 426-3630

*Counsel for Plaintiff*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………..ii

PRELIMINARY STATEMENT……………………………………………….1

FACTUAL BACKGROUND………………………………………………….1

STANDARD OF REVIEW……………………………………………………2

ARGUMENT………………………………………………………………….3

CONCLUSION………………………………………………………………..11

# **TABLE OF AUTHORITIES**

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)……………………………………………….9

*Daimler AG v. Bauman*, 134 S.Ct. 746, 750 (2014)……………………………………….5

*International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945)…………………….5

*Island Territory of Curaco v. Solitron Devices, Inc*., 489 F.2d 1313 (2d Cir. 1973)…………..8

*Kassner v. 2nd Avenue Deli*., 496 F.3d 229, 237 (2d Cir. 2007)……………………………..10

*Morrison v. Natl. Australia Bank, Ltd*., 547 F.3d 167, 170 (2008)……………………………1

*Republic of Argentina v. Weltover*, 504 U.S. 607, 614 (1992)…………………………………4

*Rote v. Zel Custom Manufacturing LLC*, 816 F.3d 383, 389 (6th Cir. 2016)…………………4

*Sectra Comm. AB v. Absolute Software*, No. C22-0353RSM, (W.D.W.A. 2023)……………….7

*Seetransport et al. v. Navimpex Central*, 29 F.3d 79, 82 (1994)………………………………8

*State Employees Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007)……….11

28 U.S.C. § 1602 et seq…………………………...............................................3

28 U.S.C. 1603(b)……………………………………………………………………….6

28 U.S.C. 1604…………………………………………………………………………..3

28 U.S.C. 1605(b)……………………………………………………………………….3

28 U.S.C. 1391(f)(1)……………………………………………………………………..6

28 U.S.C. 1391(f)(3)……………………………………………………………………6,7

28 U.S.C. § 1605(a)(2)…………………………………………………………………..3, 4

F.R.C.P. 12(b)(1)………………………………………………………………………….2

F.R.C.P. 12(b)(2)………………………………………………………………………….3

F.R.C.P. 12(b)(3)………………………………………………………………………….3, 6

F.R.C.P. 12(b)(6)………………………………………………………………… 3,9,10

New York Uniform Foreign Country Money Judgments Recognition Act, N.Y.C.P.L.R.

§§ 5301 et seq. "Article 53"……………………………………………………………...1,7

NY CPLR § 5304……………………………………………………………………………7

Article 64 of the Law No. 30 of 1999 "Indonesian Arbitration Law…………………………..8

# PRELIMINARY STATEMENT

Plaintiff PT Rahajasa Media Internet [hereinafter "Plaintiff" or "Rahajasa"] respectfully submits this memorandum of law in support of its opposition to the motion to dismiss filed by Defendants: Center for Provision and Management of Telecommunications and Informatics Financing, Directorate General of Post Informatics, Ministry of Communication and Information, Republic Of Indonesia, formerly Office for Rural Telecommunications and Informatics, Directorate General of Posts and Telecommunications, Ministry of Communication and Information of the Republic of Indonesia [hereinafter "BAKTI"]; Ministry of Communication and Information, Republic of Indonesia [hereinafter "MOIC"]; Ministry of Finance, Republic of Indonesia [hereinafter "MOF"], and Republic of Indonesia [hereinafter "Indonesia"] [collectively hereinafter "Defendants"].

# FACTUAL BACKGROUND

Plaintiff brings this action against the Defendants under the New York Uniform Foreign Country Money Judgments Recognition Act, N.Y.C.P.L.R. §§ 5301 et seq. ["Article 53"], for the Recognition and enforcement of a money judgment issued by the Chairman of the South Jakarta District Court in Jakarta, Indonesia, on September 14, 2022 ["Judgment"]. This Judgment is the writ of execution on an underlying duly registered arbitration award originating from the Indonesian National Board of Arbitration ["BANI"].

The original dispute arose from a series of contract disputes between Plaintiff Rahajasa, a company incorporated in the Republic of Indonesia, and BAKTI, an agency of the Republic of

Indonesia, which is also a State-Owned Enterprise[1] that is part of the MOIC. The parties entered into an arbitration agreement, in the relevant contract which required resolution of any disputes through BANI. The parties proceeded to voluntarily submit to arbitration through BANI. Defendant BAKTI voluntarily participated, even suggesting preferences for specific panel members. An award was issued in favor of Plaintiff on July 27, 2017, and against Defendant BAKTI, (1) for compensatory damages totaling the equivalent of $15,407,180.41; (2) direct payment to Bank BJB, Plaintiff's creditor, in the equivalent of $1,182,377.12; (3) and interest in the equivalent of $359,419.71.

On August 15, 2017, Plaintiff's counsel duly registered the BANI award, in accordance with Indonesian law. *See* Widajanto Decl. In August 2022, Plaintiff's counsel made an application for a writ of execution on the registered award. On September 14, 2022, the South Jakarta District Court issued an order with a writ of execution. *See* Dkt. 7.6.

## STANDARD OF REVIEW

This Court has limited jurisdiction insofar as it may only hear cases for which it has subject matter jurisdiction. Pursuant to Federal Rule Civil Procedure 12(b)(1), the determination of subject matter jurisdiction is the preliminary inquire of a court, in every case, and if the court finds subject matter jurisdiction lacking, then the case must be dismissed it. *See Morrison v. Natl. Australia Bank, Ltd.*, 547 F.3d 167, 170 (2008). A plaintiff asserting such subject matter jurisdiction must prove by a preponderance of evidence that such subject matter jurisdiction exists. *See id.*

With regard to foreign states and their agencies and instrumentalities, the issue of subject matter jurisdiction is governed by the Foreign Sovereign Immunities Act, which gives foreign

---

[1] A state-owned enterprise, ["SOE"] is a legal entity that is created by a government in order to partake in commercial activities on the government's behalf.

states immunity from suit in U.S. courts, unless a party can demonstrate, by a preponderance of the evidence, that one of the statutory exceptions to immunity applies. One such exception is when the foreign state is involved in commercial activities which are either in the United States or causing a direct effect the United States.

This Court must also have personal jurisdiction over a defendant and the court when reviewing a defense of lack of personal jurisdiction, under F.R.C.P. 12(b)(2), a plaintiff has the burden of proving by a preponderance of the evidence that personal jurisdiction exists. The Court may also examine a defense of improper venue under F.R.C.P. 12(b)(3), which also requires a plaintiff to offer a prima facie showing of proper venue, by a preponderance of the evidence. Finally, when considering dismissal under F.R.C.P. 12(b)(6), the court must determine whether a complaint is sufficiently plead to include factual allegations which "state a claim upon which relief may be granted.

## ARGUMENT

### THE DEFENDANTS ACTIONS IN DISPUTE AMOUNT TO COMMERCIAL ACTIVITY WHICH BAR IMMUNITY UNDER THE FOREIGN SOVERIEGN IMMUNITIES ACT.

The Foreign Sovereign Immunities Act of 1976 ["FSIA"], 28 U.S.C. § 1602 et seq., governs the jurisdictional parameters in which a U.S. court may exercise jurisdiction over a foreign state. Under FISA: "a foreign state shall be immune from the jurisdiction of the courts of the United States and the States' unless one of several statutorily defined exceptions applies. *See id.* at § 1604. There are exceptions to the general rule of immunity under FSIA, which include a "commercial" exception in § 1605(a)(2) to immunity from a civil case:

> …in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States. § 1605(a)(2).

1. THE DEFENDANTS WERE ENGAGED SOLELY IN COMMERCIAL ACTIVITY.

Under this FSIA exception, "commercial activity" is defined as activity between parties wherein the foreign state is acting as a private party, as opposed to a regulator of a market. So the commercial character of a predicate act is determined by its nature rather than its purpose. *See Republic of Argentina v. Weltover*, 504 U.S. 607, 614 (1992); *Rote v. Zel Custom Manufacturing LLC*, 816 F.3d 383, 389 (6th Cir. 2016).

In this case, Plaintiff has accurately pled, in the Amended Complaint, that Defendant BAKTI was engaged in commercial activity with Plaintiff, that lead to a contract dispute, ultimately resulting in an arbitration award in BANI. BANI is an arbitration body which deals primarily in commercial disputes. The parties had entered into a construction contract whereas BAKTI would pay Plaintiff for both (1) the construction of high-speed infrastructure in several regions, and (2) a percentage of tax revenue earned from the resulting high speed internet access subscriptions, once they were sold to households and/or members of the local populations. The nature of this type of contract is purely commercial because it is the type of contract a private party would also have the ability to enter into such a contract with Plaintiff.

2. DEFENDANTS COMMERCIAL ACTIVITY HAD A DIRECTLY EFFECT IN THE UNITED STATES.

Furthermore, under 28 U.S.C. § 1605(a)(2), the predicate activity must have a "direct effect" in the United States. *See Republic of Argentina*, 504 U.S. at 617. Presently, BAKTI invested a portion of the tax revenue it generated from the relevant high speed infrastructure program, in investment accounts, in this District, instead of paying Plaintiff, in breach of their contract. There was a direct effect on the District when money was transferred to accounts here, in lieu of BAKTI meeting its contractual obligation to Plaintiff.

Because the parties entered into commercial contracts and Defendant BAKTI's breach of those contracts had a direct effect on this District, this court properly has subject matter jurisdiction over this case.

**THIS COURT HAS PERSONAL JURISDICTION OVER THESE DEFENDANTS**

1. <u>DEFENDANTS POSSESS MINIMUM CONTACTS IN THIS DISTRICT TO SATISFY THE DUE PROCESS REQUIREMENTS OF THE FIFTH AMENDMENT</u>.

To satisfy the requirements of Due Process under the Fifth Amendment, a party must show that a defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice". *See International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945). Furthermore, to establish general jurisdiction, a plaintiff must demonstrate that "…defendant's affiliations with the State are so `continuous and systematic, as to render it essentially at home in the forum State" *See Daimler AG v. Bauman*, 134 S.Ct. 746, 750 (2014). In Daimler, the claim, as Plaintiff's, involved a foreign plaintiff suing in a U.S. court, a foreign party, regarding actions that largely happened on foreign soil. Defendant BAKTI, as well as the other defendants are engaged in business activity, in this District, described above, as well as the routine purchase of U.S. Treasury bonds, and management of U.S. investment accounts. *See* Butler Decl.

Furthermore, Plaintiff's action complies with the requirements of Due Process under the Fifth Amendment, not only because Plaintiff established a "direct effect" on this District, as analyzed above, but also due to the regular business activity Defendant BAKTI engages in, in New York County. *See* Butler Decl. ¶ 1-7. Defendant BAKTI, an Indonesian state-owned enterprise ["SOE"], along with other similar Indonesian SOE's regularly recruit employers living in North America to work, for them, in some capacity, in North America. The SOE's target the "Indonesian diaspora", in their marketing efforts and then they hold employee recruiting events, including one just held in May 2024, in Manhattan. BAKTI also engages directly with investors in New York, through its efforts to secure funding for it's telecommunication services, including, but not limited to, the acquisition of a

satellite, SATRIA 1. The acquisition of the SATRIA 1 technology was brokered by American professionals and it involved American investment, from New York. All of these activities support a finding of general jurisdiction over Defendants.

## **VENUE IS PROPER IN THIS CASE**.

1. <u>DEFENDANT BAKTI IS ENGAGED IN BUSINESS AND OWNS PROPERTY IN THIS DISTRICT</u>.

The Federal Rule of Civil Procedure 12(b)(3) governs venue and requires that a court dismiss or transfer a case if venue is improper. Defendant BAKTI is foreign government entity which fails under the category of agency or instrumentality, as defined in 28 U.S.C. 1603(b). Defendants concede that point. Civil action may be brought against foreign states, under 28 U.S.C. § 1391(f), only:

(1) in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;

(2) in any judicial district in which the vessel or cargo of a foreign state is situated, if the claim is asserted under section 1605(b) of this title;

(3) in any judicial district in which the agency or instrumentality is licensed to do business or is doing business, if the action if brought against an agency or instrumentality of a foreign state as defined in section 1603(b) of this title; or

(4) in the United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof.

*See id*.

This district is the proper venue for this case under the Federal Venue Statute, 28 U.S.C. 1391(f)(1) and (3).

The contract between Plaintiff and Defendant BAKTI was such that the latter paid Plaintiff for construction of high-speed internet infrastructure and then it agreed to pay Plaintiff a

6

portion of the tax revenue, from subscriptions to the local population, once those were established. The contract dispute arose primarily from Defendant's failure to pay the agreed upon portions of tax revenue, when that came due. Instead BAKTI invested those funds in the United States, by purchasing U.S. Treasury bonds and otherwise investing in New York based investment funds. That activity lead to the transfer of monies owed to Plaintiff, to New York accounts. Since investment accounts are considered assets, it is accurate to say that a substantial portion of property, which is the subject of the parties dispute, can be found in this District which renders venue proper, here.

With regard to 28 U.S.C. § 1391(f)(3), Plaintiff asks the court to take judicial notice of the multitude of information Plaintiff discovered on the internet regarding commercial involvement in this District. *See* Butler Decl. ¶1-7.

2. JURISDICTIONAL DISCOVERY IS WARRANTED IN THIS CASE.

Plaintiff also seeks leave to conduct jurisdictional discovery on a good faith basis, upon the discovery of evidence that tends to suggest a strong jurisdictional tie to this District. *See* Butler Decl. ¶1-7. *See Sectra Comm. AB v. Absolute Software*, No. C22-0353RSM, (W.D.W.A. 2023).

**THE JUDGMENT IS ENFORCEABLE UNDER THE NEW YORK FOREIGN COUNTRY MONEY JUDGMENTS ACT**

Article 53 of the New York Civil Procedure Law and Rules, otherwise know as the "New York Foreign Country Money Judgments Act, ["Article 53"], governs the recognition and enforcement of any "foreign country judgment" granting or denying recovery of a sum of money, other than a judgment for taxes, a fine or other penalty, or "a judgment for divorce, support or maintenance, or other judgment rendered in connection with domestic relations." *See* NY CPLR § 5304. New York courts generally recognize a foreign money judgment, provided that (a) procurement of the judgment meets basic notions of due process and (b) the original court had

personal jurisdiction over the defendant. *See id.*

1. <u>THE WRIT OF EXECUTION AMOUNTS TO A MONEY JUDGMENT</u>.

The writ of execution issued on September 14, 2022, on the properly registered BANI arbitration award qualifies as a money judgment, under Indonesian Arbitration Law. Specifically, under Article 64 of the Law No. 30 of 1999 ["Indonesian Arbitration Law"], when a domestic arbitration award is registered within the 30-day statutory deadline, the award becomes the equivalent of a civil money judgment under Indonesian Law. *See* Roosdiono Decl. ¶ 3. Then when Plaintiff made a written application through local counsel for a writ of execution, and it was issued, on September 14, 2022, registered BANI award became the equivalent of a money judgment, in accordance with U.S. law. *See Seetransport et al. v. Navimpex Central*, 29 F.3d 79, 82 (1994); *See also Island Territory of Curaco v. Solitron Devices, Inc.*, 489 F.2d 1313 (2d Cir. 1973). *See* Surizain Decl.¶ 5.

   A. <u>JUDGMENT GRANTS A SUM CERTAIN TO PLAINTIFF.</u>

The Judgment grants a specific sum certain, in a manner that is consistent with arbitration awards in general. The Judgment is, in fact, the BANI arbitration award which was converted to a money judgment upon proper registration and execution. *See* Roosdiono Decl. ¶ 3; *See Seetransport et al. v. Navimpex Central*, 29 F.3d 79, 82 (1994); *See also Island Territory of Curaco v. Solitron Devices, Inc.*, 489 F.2d 1313 (2d Cir. 1973). In fact Plaintiff obtained what is otherwise referred to as a Stipulation, on September 14, 2022, as evidenced on the top center identifying case number, on the front page of the decision and order. *See* Dkt. 7.6. Such an interpretation is consistent with the universal understanding of a writ of execution which is something a judgment creditor may receive, upon ex parte request, from the relevant clerk's office, in order to enforce the money judgment.

B. JUDGMENT IS FINAL CONCLUSIVE AND ENFORCEABLE IN INDONESIA.

According to Indonesian Arbitration Law, a domestic arbitration award must be registered in the district court where the relevant respondent is domiciled. *See* Roosdiono Decl. ¶ 3. When Plaintiff obtained the BANI award on July 27, 2017, then respondent BAKTI was domiciled in the South Jakarta District Court. Plaintiff proceeded to register the BANI award there, in accordance with Indonesian Arbitration Law. The registration of the award had to take place within 30 days of issuance, that deadline expired on or about August 26, 2017. Any execution of the award would then need to happen from that court – the South Jakarta District Court. There is no Indonesian law to support an execution of that registered award coming from the Central Jakarta District Court, as Defendants' assert. In fact, the BANI award is worth the equivalent of nearly $16M, without interest or costs included and any outstanding debt Plaintiff may owe to it's biggest creditor Bank BJB, in Indonesia, was roughly $3M. If an execution of the award had taken place and funds were collected to satisfy the Judgment, then the bankruptcy case would most certainly have closed three years ago, and distributed the excess back to Plaintiff, however, there is no evidence that happened. *See* Utima Decl. ¶ 4-6.

## THE AMENDED COMPLAINT PROPERLY STATES A CLAIM AGAINST ALL DEFENDANTS

The court should not grant a motion to dismiss based on F.R.C.P. 12(b)(6) unless it is completely satisfied that the complaint cannot state any facts that could entitle Plaintiff to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court must, in fact, construe the pleadings, presently the Amended Complaint, "in the light most favorable to [plaintiff]" and accept all allegation as pled in the complaint as true, liberally construing the allegations in favor

of Plaintiff, by drawing all reasonable inferences in Plaintiff's favor. *See Kassner v. 2nd Avenue Deli.*, 496 F.3d 229, 237 (2d Cir. 2007); *See also* F.R.C.P. 12(b)(6).

In the light most favorable to Plaintiff, it has stated a cause of action against Defendants upon which relief may be granted.

### **RAHAJASA HAS STANDING TO BRING THIS ACTION.**

The parties agree that the issue of Plaintiff's standing to bring this action is a matter for this court must defer to the courts of Indonesia, under the principles of comity. This court may refer to the September 14, 2022, execution order as a valid order from the court of competence, for the relevant BANI award. *See* Dkt. 7.6. Furthermore, the Indonesian Commercial Court, which oversees the bankruptcy case, cannot be said to have given Plaintiff due process. Plaintiff was forced into involuntary bankruptcy without being served proper notice of the proceeding. *See* Widajanto Decl.¶ 2-8. The proceedings have lasted for more than five years without any end in sight, while Plaintiff is prevented from receiving funds in satisfaction of the BANI award, Defendants allege they recovered. In fact, if the BANI award, ie, Judgment, had been fully satisfied, then the bankruptcy case should have been resolved three years ago, with Plaintiff receiving a sizeable amount of proceeds from the receivers. The only creditor remaining, in that case, would have been paid, in 2021, in full. The bankruptcy proceeding was not conducted in accordance with the proper local procedures and rules. *See* Utami Decl.

Plaintiff was issued a valid and enforceable writ of execution on September 14, 2022, by a judge at the court of competence, with regard to the BANI award. That judge issued the Judgment upon a written application of Plaintiff's attorney and the court was on constructive notice that the bankruptcy case was pending.

# **PLAINTIFF SEEKS LEAVE TO AMEND THE AMENDED COMPLAINT TO CLARIFY THE RELATIONSHIP BETWEEN ALL DEFENDANTS**

While Defendant is seeking dismissal of Plaintiff's Amended Complaint, Plaintiff now asks the court for leave to amend the complaint to clarify the relationship between all four defendants. *See State Employees Bar. Agent Coal. v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007). Plaintiff seeks to amend the Amended Complaint under Federal Rule of Civil Procedure 15 to clarify the relationship between all four defendants, as they pertain to this action. *See* Butler Decl. ¶ 8.

# **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss should be denied in its entirety and Plaintiff should be granted leave to amend the complaint.

Dated: November 20, 2024
      New York, New York

Respectfully submitted,

*/s/ Bridget Butler*
Bridget Butler
Law Office of Bridget Butler, Esq.
757 Third Avenue, 20th Floor
New York, New York 10017
(917) 426-3630
bbutlerlaw@gmail.com

*Counsel for Plaintiff*